IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

| | |
|---|---|
| INFORMATION PROTECTION AND AUTHENTICATION OF WEST VIRGINIA, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>MCAFEE, INC.<br><br>    Defendant. | Civil Action No. 1:09-CV-76<br>(Judge Irene M. Keeley) |

**MCAFEE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA
PURSUANT TO 28 U.S.C. § 1404(a)**

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND AND OVERVIEW OF THE CASE ....................................................... 3

    A. This is Mr. Fischer's third patent litigation against McAfee or its customers. .......... 3

        1. The Texas litigations. ............................................................................................. 4

        2. The West Virginia litigation. .................................................................................. 4

    B. The Location of the Witnesses and the Evidence ......................................................... 5

        1. IPAW has only Limited Ties to the Northern District of West Virginia. ................ 5

        2. McAfee has only Limited Ties to the Northern District of West Virginia. ............. 5

    C. Documents pertaining to the accused products are located with McAfee's key
        trial witnesses. ................................................................................................................ 6

    D. No witnesses are located in West Virginia. .................................................................. 6

        1. Witnesses Pertaining to McAfee's Accused Products. ............................................ 6

        2. Witnesses Pertaining to IPAW and the Patents-in-Suit. .......................................... 7

III. ARGUMENT ........................................................................................................................ 8

    A. Overview of the applicable legal standard. .................................................................. 8

    B. This case could have been brought in the Northern District of California. ............... 9

    C. IPAW's choice of forum is not entitled to substantial deference because it has
        limited contacts with the Northern District of West Virginia. ................................... 9

    D. The Northern District of California is a more convenient forum for
        the witnesses. ................................................................................................................ 10

    E. The Northern District of California is a more convenient forum for the parties. .. 12

    F. This case should be decided in the Northern District of California. ........................ 12

    G. The transfer of this case to the Northern District of California is in the interests
        of justice. ....................................................................................................................... 13

IV. CONCLUSION .................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Cases**

*Agilent Technologies, Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322 (E.D. Va. 2004) .................. 14

*Corry v. CFM Majestic, Inc.*, 16 F. Supp. 2d 660 (E.D. Va. 1998) ................................................ 9

*Global Innovation Technology Holdings, LLC v. Acer America Corp.*, No. 09-20127 (S.D. Fla. Jan. 15, 2009) ................................................................................................................. 1, 4

*In re Genentech, Inc.*, 556 F.3d 1338 (Fed. Cir. 2009) .................................................................. 3

*In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) ........................................................ 3, 9

*In re Volkswagen of Am., Inc.*, 296 Fed. Appx. 11 (Fed. Cir. 2008) .............................................. 3

*Information Protection and Authentication of Texas, LLC v. Symantec Corp.*, No. 2:08-CV-484 (E.D. Tex. Dec. 30, 2008) ............................................................................................... 1, 4

*JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731 (E.D. Va. 2007) ........................................................ 13

*Kabat v. Bayer Cropscience LP*, 2008 U.S. Dist. Lexis 41187 (E.D. Va. May 22, 2008) ........... 12

*Klay v. AXA Equitable Life Ins. Co.*, 2009 U.S. Dist. Lexis 470 (N.D. W. Va. Jan. 6, 2009) ........ 8

*Lycos, Inc. v. Tivo, Inc.*, 499 F. Supp. 2d 685 (E.D. Va. 2007) .............................................. 10, 12

*Scott v. Life Investors Ins. Co.*, 2007 U.S. Dist. Lexis 85934 (N.D. W. Va. Nov. 13, 2007) ... 9, 11

*Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741 (E.D. Va. 2003) ............ 10

*Tse v. Apple Computer, Inc.*, 2006 U.S. District LEXIS 68451 (D. Md. Aug. 31, 2006) ............ 14

*Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582 (E.D. Va. 1992 ....................... 8, 9, 10, 14

**Statutes**

28 U.S.C. § 1391(c) ........................................................................................................................ 9

28 U.S.C. § 1400 ............................................................................................................................ 9

28 U.S.C. § 1400(b) ....................................................................................................................... 9

28 U.S.C. § 1404(a) .................................................................................................................... 3, 8

I.  **INTRODUCTION**

The plaintiff in this case ("IPAW")[1] was recently registered as a foreign company in West Virginia by Mr. Fischer, one of its members, presumably for the purpose of filing this litigation.  *See* Exhibits 1-2.[2]  In fact, this is the third patent infringement litigation Mr. Fischer has filed against McAfee or its customers since the end of last year, and each was initially filed in a different jurisdiction.  *See* Exhibits 3-4.[3]  In an effort to settle the first two cases, McAfee and Mr. Fischer began settlement discussions in April, 2009, and had a face-to-face settlement meeting on May 7, 2009.  *See* Benefield Declaration at ¶¶ 2-3.  During the pendency of these discussions, however (and unbeknownst to McAfee), Mr. Fischer formed the plaintiff in this case on May 12, 2009; a mere five days after the face-to-face settlement meeting.  *See* Exhibit 1.  Mr. Fischer then assigned the patents-in-suit from himself to IPAW on June 1, 2009, and filed this suit against McAfee on June 8, 2009.  *See* Exhibits 6-7.[4]  As such, Mr. Fischer was apparently readying himself for this lawsuit while he was simultaneously engaging McAfee in settlement discussions.

---

[1]  The plaintiff in this case is Information Protection and Authentication of West Virginia, LLC.

[2]  The truth and accuracy of the exhibits to this motion are verified in the attached Declaration of Mr. Michael A. Benefield.  Exhibit 1 contains information on IPAW's formation, which was obtained from West Virginia's Secretary of State Office.  IPAW was formed in Delaware on May 12, 2009, and was thereafter registered as a foreign limited liability company in West Virginia on May 21, 2009.  *See id.*  Exhibit 2 contains the cover page for each of the three patents-in-suit.  The patents-in-suit include U.S. Patent Nos. 5,436,972, 6,141,423 and 6,216,229.

[3]  Exhibit 3 contains the original complaint from Mr. Fischer's first patent infringement suit against McAfee, which is styled *Information Protection and Authentication of Texas, LLC v. Symantec Corp.*, No. 2:08-CV-484 (E.D. Tex. Dec. 30, 2008) ("*IPAT I*").  *IPAT I* was filed on December 30, 2008.  Exhibit 4 is a copy of the complaint from Mr. Fischer's second patent infringement suit against McAfee's customers, which is styled *Global Innovation Technology Holdings, LLC v. Acer America Corp.*, No. 09-20127 (S.D. Fla. Jan. 15, 2009) ("*IPAT II*").  *IPAT II* was filed on January 15, 2009.  Information Protection and Authentication of Texas, LLC ("IPAT") is a named plaintiff in both *IPAT I* and *IPAT II*.  The *IPAT II* case was transferred to the Eastern District of Texas on June 16, 2009, and has been assigned case number 2:09-CV-198.  *See* Exhibit 5 (copy of *IPAT II* transfer order).

[4]  Exhibit 6 contains a copy of Mr. Fischer's assignment of the patents-in-suit from himself to IPAW.  Exhibit 7 contains a copy of the original complaint in this case, which was filed on June 8, 2009.

1

The reason for Mr. Fischer's current choice in forum is not entirely clear. IPAW appears to have no employees, and none of its members appear to live in West Virginia (Mr. Fischer is a resident of Florida). *See* Exhibit 6. The complaint does not assert that IPAW has conducted business in West Virginia (only that it is authorized to do so). In fact, IPAW is a Delaware company that, prior to May 12, 2009, did not even exist.

Much like IPAW, McAfee's connections to this forum are limited. McAfee has no offices in West Virginia, and does not employ any of West Virginia's citizens. *See* Jackson Declaration at ¶ 8. McAfee's connections to West Virginia are limited to the solicitation, sales, and use of its products in West Virginia, and those products are not alleged to be (nor are they) used in any manner or degree differently than they are throughout the United States. In view of these limited connections, it appears as though no relevant witnesses are located in the Northern District of West Virginia.

In contrast, McAfee has identified three key trial witnesses that have genuine ties in the Northern District of California. Mr. Michael Siegel, a Senior Director of Product Management for McAfee, works and lives in the Northern District of California, and will provide relevant testimony and documents in this case. *See* Siegel Declaration at ¶¶ 1, 3. Mr. Robert Amezcua, a Global Director for McAfee, lives in Texas and spends approximately one week per month working on the west coast. More specifically, Mr. Amezcua spends one to two days per month working at McAfee's corporate headquarters in the Northern District of California. Mr. Amezcua will also provide relevant testimony and documents in this case. *See* Amezcua Declaration at ¶¶ 1-2, 4. Finally, Mr. Simon Hunt, a Vice President and Chief Technology Officer for McAfee, will provide relevant testimony and documents in this case. Mr. Hunt lives in Florida, and spends 3 to 4 days per month working on the west coast. *See* Hunt Declaration at

¶¶ 1, 5-6. Each of these key witnesses either lives in or routinely travels to California for work. In contrast, outside of this litigation, none of these witnesses have reason to travel to West Virginia. *See* Siegel Dec. at ¶ 2, Amezcua Dec. at ¶ 3, Hunt Dec. at ¶ 7.

The presence of these key witnesses in California, combined with the absence of any witnesses in West Virginia, makes the Northern District of California the more convenient forum for this case. *See* 28 U.S.C. § 1404(a) (stating that transfer is appropriate "in the interest of justice" and for "the convenience of the parties and witnesses"). As such, McAfee respectfully moves the Court to transfer this case to the Northern District of California.[5]

## II.  BACKGROUND AND OVERVIEW OF THE CASE

### A.  This is Mr. Fischer's third patent litigation against McAfee or its customers.

This is the third patent infringement case initiated by Mr. Fischer against McAfee or its customers since the end of last year, each of which was filed in a different jurisdiction.[6] *See* Exhibits 3-4, 7. Mr. Fischer's activities leading up to each of these patent litigations have been identical. First, he formed one or more limited liability companies ("LLC"), and registered them in a forum of his choice. *See* Exhibits 1, 8-9.[7] Then, he executed legal instruments to transfer

---

[5] The Federal Circuit has recently issued three decisions regarding the propriety of § 1404(a) transfers in patent cases. All of these cases originated in the Eastern District of Texas. *See, e.g.*, *In re TS Tech USA Corp.*, 551 F.3d 1315, 1322 (Fed. Cir. 2008) ("Because TS Tech has met its difficult burden of establishing that the district court clearly abused its discretion in denying transfer of venue to the Southern District of Ohio, and because we determine that mandamus relief is appropriate in this case, we grant TS Tech's petition for a writ of mandamus."); *see also In re Genentech, Inc.*, 556 F.3d 1338 (Fed. Cir. 2009) (granting a writ of mandamus to transfer the case to the Northern District of California); *In re Volkswagen of Am., Inc.*, 296 Fed. Appx. 11 (Fed. Cir. 2008) (denying a writ of mandamus to transfer the case to the Eastern District of Michigan on the basis of judicial economy) (unreported decision).

[6] Although originally filed in separate forums, *IPAT I* and *IPAT II* are now both pending in the Eastern District of Texas. *See* Exhibit 5 (transferring *IPAT II* to Texas after concluding that there was "substantial overlap" between the two cases).

[7] Exhibit 8 contains information on IPAT's formation, which was obtained from the Texas Secretary of State's office. Exhibit 9 contains information on Global's formation, which was obtained from the Florida Secretary of State's office.

3

patent rights to (or among) the newly formed LLCs, and finally, he directed the filing of patent infringement actions in his newly chosen forums. *See* Exhibits 3-4, 6-7, and 10-11.[8]

### 1.     The Texas litigations.

In Mr. Fischer's first litigation ("*IPAT I*"),[9] he accuses McAfee's particular firewall software of infringing U.S. Patent Nos. 5,311,591 and 5,412,717 (the "IPAT patents"). In his second litigation ("*IPAT II*"),[10] Mr. Fischer accuses certain computer manufacturers, some of whom are customers of McAfee, of infringing the same two patents. To the extent the accused functionality in *IPAT II* is provided by the same McAfee firewall software that is at issue in *IPAT I*, the same McAfee products will be at issue in both suits. As such, Mr. Fischer has accused McAfee of infringement in two separate lawsuits, the first directly against McAfee and the second against McAfee's customers.

### 2.     The West Virginia litigation.

As discussed above, this litigation arose during settlement discussions between Mr. Fischer and McAfee regarding the resolution of the IPAT cases. These settlement discussions began in April, 2009, with a face-to-face meeting occurring on May 7, 2009. *See* Benefield Dec. at ¶¶ 2-3. Mr. Fischer formed IPAW five days later on May 12, 2009, in Delaware, and registered IPAW in West Virginia on May 21, 2009. *See* Exhibit 1. Mr. Fischer then assigned the patents-in-suit from himself to IPAW on June 1, 2009, and filed the instant complaint on June 8, 2009. *See* Exhibits 6-7. Mr. Fischer could have chosen to resolve his instant disputes

---

[8] Exhibit 10 contains a copy of Mr. Fischer's assignment of U.S. Patent Nos. 5,311,591 and 5,412,717 ("the IPAT patents") from himself to Global. This assignment was executed by Mr. Fischer on September 22, 2008. Exhibit 11 contains a copy of Global's assignment of the IPAT patents to IPAT. This assignment was also executed by Mr. Fischer on September 22, 2008, in his capacity as the Member/President of Global.

[9] As discussed above, this case is styled *Information Protection and Authentication of Texas, LLC v. Symantec Corp.*, No 2:08-CV-484 (E.D. Tex. Dec. 30, 2008).

[10] As discussed above, this case is now styled *Global Innovation Technology Holdings, LLC v. Acer America Corp.*, No. 2:09-CV-198 (E.D. Tex. Jan. 15, 2009). IPAT is also a named plaintiff in this case.

with McAfee through the settlement dialogue that was established as part of the IPAT cases. Instead, however, he chose to file the instant litigation in a forum that has an attenuated connection to the parties, and no connection to the witnesses and sources of proof that are germane to this case.

    **B.**    **The Location of the Witnesses and the Evidence**

        **1.**    **IPAW has only Limited Ties to the Northern District of West Virginia.**

The plaintiff's ties to the Northern District of West Virginia appear limited to its recent registration in West Virginia. IPAW is a recently formed Delaware company that was registered in West Virginia on May 21, 2009. *See* Exhibit 1. Although the complaint asserts that IPAW's principal place of business is in Morgantown, West Virginia, the complaint makes no claim of actual business operations there. *See* Exhibit 7. Additionally, IPAW's filings with the West Virginia Secretary of State contradict the complaint, and list a Naples, Florida, address as the location of IPAW's principal office. These filings also list the residence of the two managers, or principals (one of whom is Mr. Fischer), as being in Naples, Florida. *See* Exhibit 1. In view of the above, IPAW's connections appear to emanate from Naples, Florida; not West Virginia.

        **2.**    **McAfee has only Limited Ties to the Northern District of West Virginia.**

McAfee is the only defendant in this case, and it has limited ties to the Northern District of West Virginia. McAfee is a Delaware corporation, headquartered in Santa Clara, California. *See* Jackson Dec. at ¶ 2. McAfee is a global company, with offices and employees located throughout the United States, such as in California, Oregon, and Texas, as well as in several other countries throughout the world, such as Great Britain, Belgium, and Sweden. Although McAfee has over one

5

thousand employees in the United States, none of them live or work in West Virginia. *See* Jackson Dec. at ¶¶ 2-8. McAfee has no offices in West Virginia, and its presence in West Virginia is limited to the sale and use of its products (which are marketed throughout the United States). *Id.* at ¶ 8.

In contrast, McAfee has numerous ties to the Northern District of California in view of its numerous offices there, as well as the many people it employs in California. In this regard, McAfee employs 712 people at its corporate headquarters in Santa Clara, California, and employs an additional 183 people throughout other locations in California. *See* Jackson Dec. at ¶¶ 2-6.

  **C.** **Documents pertaining to the accused products are located with McAfee's key trial witnesses.**

Given their roles at McAfee, Messrs. Hunt, Amezcua, and Siegel have access to, and possession of documents, information, and other sources of proof. As such, relevant sources of proof are located with these witnesses in California, Texas and Florida. Additionally, McAfee expects that relevant sources of proof exist in Europe and Oregon.

  **D.** **No witnesses are located in West Virginia.**

None of McAfee's witnesses are located in West Virginia, and it appears as though none of IPAW's witnesses are located in West Virginia, as well. The following list is a summary of likely witnesses who will provide testimony in this action:

    **1.** **Witnesses Pertaining to McAfee's Accused Products.**

- Mr. Simon Hunt, Vice-President and Chief Technology Officer of McAfee's Data Protection business, will provide testimony at trial regarding the functionality of the accused products, as well as McAfee's technical management and development practices.

6

- Mr. Hunt lives in Naples, Florida, and spends approximately 3 to 4 days per month working on the west coast. *See* Hunt Dec. at ¶¶ 1, 5-6.

- Mr. Michael Siegel, the Senior Director of Product Management for McAfee's Data Protection business unit, will provide testimony at trial regarding the profitability of the accused products. Mr. Siegel lives in Los Gatos, California, and works at McAfee's corporate headquarters in Santa Clara, California. *See* Siegel Dec. at ¶¶ 1, 3

- Mr. Rob Amezcua, the Global Director for McAfee's Data Protection business unit, will provide testimony regarding the sales volume of the accused products. Mr. Amezcua lives in Frisco, Texas, and spends approximately one week out of every month working in California. During his week in California, Mr. Amezcua spends approximately one to two days working at McAfee's corporate headquarters. *See* Amezcua Dec. at ¶¶ 1-2, 4. Mr. Amezcua will also serve as McAfee's corporate representative at trial.

As is evident from the above, all of McAfee's key trial witnesses spend at least a portion of their time working in the Northern District of California. Additionally, these witnesses do not travel to West Virginia on business, and have no current plans to travel to West Virginia. *See* Hunt Dec. at ¶ 7; Siegel Dec. at ¶ 2; Amezcua Dec. at ¶ 3.

### 2. Witnesses Pertaining to IPAW and the Patents-in-Suit.

- Mr. Fischer, one of the two members of IPAW and the named inventor of the patent-in-suit, will likely provide trial testimony about his company and his patents. Mr. Fischer lives in Naples, Florida. *See* Exhibit 13.

7

- Messrs. Mark Nusbaum, John Lastova, and Joseph Rhoa of Nixon & Vanderhye in Arlington, Virginia, were involved in the prosecution of the patents-in-suit.[11] Each of these gentlemen work in Arlington, Virginia. *See* Exhibit 12.[12]

As is evident from the above summary, none of IPAW's witnesses appear to spend any time working in West Virginia. Additionally, the majority of the trial witnesses in this case are current employees of McAfee, who either live in California or spend at least a portion of their time working in California.

## III. ARGUMENT

### A. Overview of the applicable legal standard.

Pursuant to 28 U.S.C. § 1404(a), a court may transfer a civil action to any judicial district in which it could have been brought for the "convenience of the parties and witnesses" and "in the interests of justice." 28 U.S.C. § 1404(a); *see also Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 592 (E.D. Va. 1992; *see also Klay v. AXA Equitable Life Ins. Co.*, 2009 U.S. Dist. Lexis 470, at *4 (N.D. W. Va. Jan. 6, 2009) (The purpose of § 1404(a is to "allow a court to transfer venue in order to make [the] trial of a case easy, expeditious and inexpensive." (internal quotations and citation omitted)).

When deciding a motion to transfer venue under § 1404(a), Courts in this circuit[13] typically consider and balance a variety of factors, including: (1) the plaintiff's choice in venue; (2) the location of the witnesses and the evidence; (3) the cost of obtaining the attendance of witnesses at trial; (4) the convenience of the parties; (5) the interest in having local controversies decided at home; and (6) the interests of justice. *See Verosol B.V*, 806 F. Supp. at 592; *Corry v.*

---

[11] Mr. Nusbaum was the prosecuting attorney for the '972 patent, Messrs. Nusbaum, Lastova, and Rhoa were the prosecuting attorneys for the '423 patent, and Messrs. Rhoa was the prosecuting attorney for the '229 patent.

[12] Exhibit 12 contains the Patent Office's profile for Messrs. Nusbaum, Lastova, and Rhoa. The profiles indicate that each attorney works in Arlington, Virginia.

[13] Venue transfer motions in patent cases are governed by the "laws of the regional circuit in which the district court sits . . . ." *In re TS Tech*, 551 F.3d at 1319.

*CFM Majestic, Inc.*, 16 F. Supp. 2d 660, 666 & n.14 (E.D. Va. 1998); *see also Scott v. Life Investors Ins. Co.*, 2007 U.S. Dist. Lexis 85934, at *8 (N.D. W. Va. Nov. 13, 2007). The moving party bears the burden of showing the propriety of transfer, but when "a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to . . . substantial weight." *Verosol B.V.*, 806 F. Supp. at 592; *see also Scott*, 2007 U.S. Dist. Lexis 85934, at *8.

**B.     This case could have been brought in the Northern District of California.**

Pursuant to 28 U.S.C. § 1400, a patent infringement action may be brought in the district where the defendant resides. 28 U.S.C. § 1400(b). For purposes of venue, a corporation is deemed to reside in any district where it is subject to personal jurisdiction at the time the suit is filed. 28 U.S.C. § 1391(c). As such, venue is proper in a patent infringement case in any district where the defendant is subject to personal jurisdiction at the time of suit. McAfee's corporate headquarters are located in Santa Clara, California, which is within the Northern District of California. *See* Jackson Dec. at ¶ 2. As such, McAfee is subject to personal jurisdiction in the Northern District of California, and this case could therefore have been brought in the Northern District of California.

**C.     IPAW's choice of forum is not entitled to substantial deference because it has limited contacts with the Northern District of West Virginia.**

When balancing the venue factors, Courts in this circuit typically give "substantial weight" to the plaintiff's choice in forum. *Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741, 742 (E.D. Va. 2003). If "a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, [however] the plaintiff's chosen venue is not

9

entitled to such substantial weight." *Id.* (internal quotations and citation omitted). The mere existence of sales activity within the district by a defendant is insufficient to rebut the reduced deference that is attributed to a foreign plaintiff's choice in forum in a patent infringement case. *Lycos, Inc. v. Tivo, Inc.*, 499 F. Supp. 2d 685, 692 (E.D. Va. 2007).

Turning to the facts of this case, it appears as though Mr. Fischer formed IPAW solely for the purpose of this litigation. For example, IPAW was formed in Delaware on May 12, 2009, and was registered as a foreign company in West Virginia on May 21, 2009, just days before this lawsuit was filed on June 8, 2009. *See* Exhibits 1, and 6-7. IPAW has two members (or managers), neither of whom appears to reside in this district. *See* Exhibit 1. Mr. Fischer resides in Naples, Florida, and although Mr. Machen's residence is unclear, it appears as though he has more of a connection with Florida than West Virginia. *See* Exhibits 1, 6, 9. In fact, Mr. Machen is a member of both Global and IPAW, each of which claims a principal office in Naples, Florida. *See* Exhibits 1, 9. In view of the above facts, IPAW's only connection to West Virginia appears to be this litigation. Because IPAW is a foreign company, with limited ties to this district, its choice in forum is not entitled to "substantial weight." *Verosol B.V*, 806 F. Supp. at 592; *see also Scott*, 2007 U.S. Dist. Lexis 85934, at *8.

> **D.    The Northern District of California is a more convenient forum for the witnesses.**

None of the witnesses in this case appear to live or work in West Virginia. In contrast, three of McAfee's key witnesses live and/or work in Santa Clara, California, which is in the Northern District of California. For example, Mr. Michael Siegel lives in Los Gatos, California, and works at McAfee's corporate headquarters in Santa Clara, California. *See* Siegel Dec. at ¶ 1. Mr. Siegel will provide testimony at trial pertaining to the profitability of the accused products, and how McAfee determines profitability for the accused products. *See id.* at ¶ 3. Mr. Hunt

lives in Naples, Florida, but spends three to four days per month working on the west coast, including locations in the Northern District of California.  *See* Hunt Dec. at ¶ 6.  Mr. Hunt will provide testimony at trial regarding the functionality of the accused products, as well as testimony regarding McAfee's technical management and development practices.  *See id.* at ¶ 5.  Finally, Mr. Robert Amezcua will serve as McAfee's corporate representative at trial, and will also provide testimony regarding the number of accused products that McAfee has sold, and how McAfee calculates its sales volumes for the accused products.  *See* Amezcua Dec. at ¶ 4.  Mr. Amezcua lives in Frisco, Texas, but spends one week per month working in California.  He also routinely spends one to two days per month working at McAfee's corporate headquarters in the Northern District of California.  *See id.* at ¶¶ 1-2.  Given their presence in California, none of these witnesses would need to make a separate trip to California to attend trial.  In this regard, these witnesses could plan their ordinary work schedule (and travel) around the trial of this case in California.

In contrast, none of McAfee's key witnesses travel to West Virginia on business, and none of them have current plans (outside of this litigation) to travel to West Virginia.  *See* Siegel Dec. at ¶ 2; Hunt Dec. at ¶ 7; Amezcua Dec. at ¶ 3.  Although the balance of the witnesses in this case may reside closer to one forum than the other, all of these witnesses (except Mr. Siegel) will be forced to travel to the trial of this action, whether it is tried in California or West Virginia.  In fact, even IPAW's own witnesses will have to travel to the trial of this case in West Virginia.  In view of the above witness locations in California, combined with the absence of witnesses located in West Virginia, transfer of this case to the Northern District of California is appropriate.

### E.  The Northern District of California is a more convenient forum for the parties.

"In evaluating the convenience of the parties, this [C]ourt considers factors such as the ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process." *Lycos*, 449 F. Supp. 2d at 693 (internal quotations and citation omitted). "Courts generally evaluate this factor by considering the parties' residences." *Kabat v. Bayer Cropscience LP*, 2008 U.S. Dist. Lexis 41187 (E.D. Va. May 22, 2008) (citing *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 738 (E.D. Va. 2007)). As discussed above, no witnesses and no sources of proof exist in West Virginia. In contrast, McAfee has identified three key witnesses with routine connections to the California, including locations within the Northern District of California. One of these witnesses lives and works in the Northern District of California. As such, the cost of obtaining his attendance at trial would be less if this case were transferred to California. The two remaining McAfee witnesses routinely travel to California, as well as other locations on the west coast. The transfer of this case to California would allow these witnesses to coordinate their routine work travel to California with the trial of this case there. As such, the costs of obtaining the attendance of these witnesses at trial would be less if this case were transferred to California.[14] In view of the above, combined with the foreign residence of each party, this factor weighs in favor of transferring this case to the Northern District of California.

### F.  This case should be decided in the Northern District of California.

The Federal Circuit has recently determined that it is improper to use the local interest factor to keep a case in a district having only limited connections to a patent case. *In re TS Tech*, 551 F.3d at 1321 (applying Fifth Circuit law and granting writ of mandamus to compel transfer

---

[14] Additionally, sources of proof for this case exist in California. In contrast, no sources of proof appear to exist in West Virginia.

12

under 1404(a)). In *TS Tech*, the district court used the sales of the accused products in the district to justify its denial of transfer, concluding that these sales gave the local citizens a meaningful interest in the resolution of the case. The Federal Circuit disagreed with the district court, and determined that the defendants' sales in the district were no more important to the local venire than the venire in any other district where the same products were sold throughout the United States. *Id.*; *see also Tse v. Apple Computer, Inc.*, 2006 U.S. District LEXIS 68451, at *20 (D. Md. Aug. 31, 2006) ("Maryland jurors should not be burdened with adjudicating this [patent infringement] case, which stems from conduct that occurred on the other side of the country." (citation omitted)).

As discussed above, McAfee is headquartered in the Northern District of California. McAfee has no employees and no offices in West Virginia. Although IPAW alleges that it has an office in West Virginia, the public records of the West Virginia Secretary of State indicate that it is a Delaware company with its principal office in Florida and with a Morgantown, West Virginia address listed only as its "designated office." *See* Exhibit 1. IPAW has no employees in West Virginia. In view of these connections, the citizens of the Northern District of California have a vested interest in this case, and this case should therefore be transferred to the Northern District of California.

G.   **The transfer of this case to the Northern District of California is in the interests of justice.**

The "interests of justice" is a broad category that includes "circumstances, such as the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment." *Agilent Technologies, Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 329 (E.D. Va. 2004). Most of these factors are not relevant to the matter at

13

hand. The "possibility of harassment" factor, however, supports the transfer of this case to California.

As discussed above, Mr. Fischer readied this litigation while McAfee was engaged in good faith settlement discussions with him to resolve the IPAT cases. In this regard, informal settlement discussions between McAfee and Mr. Fischer began in April, 2009, and culminated in a face-to-face settlement meeting on May 7, 2009. *See* Benefield Dec. ¶¶ 2-3. Although McAfee believed progress was being made during these negotiations, Mr. Fischer apparently felt otherwise, as revealed by his formation of the plaintiff on May 12, 2009, just five days after the face-to-face settlement meeting, and during ongoing settlement discussions between McAfee and Mr. Fischer. *See* Exhibit 1.

While Mr. Fischer has the right to bring an action that is based in the patents he owns, he does not have the right to bring his action in any forum he chooses. In this regard, the appropriate forum must bear some genuine connection to the case. *See Verosol B.V*, 806 F. Supp. at 592-94. Given the circumstances leading up to the filing of this case, when combined with lack of connections of this case to West Virginia, it appears as though Mr. Fischer's choice in this forum was mainly inspired by its inconvenience to McAfee. To conclude otherwise would ignore Mr. Fischer's prior IPAT lawsuits, which were initiated in Texas and Florida. In fact, Mr. Fischer could just as easily have assigned the patents-in-suit to IPAT, and brought this suit against McAfee in Marshall, Texas, the current location of the pending IPAT cases.[15] In view of Mr. Fischer's motivation for filing the instant suit in West Virginia, combined with

---

[15] The Eastern District of Texas is also a more convenient forum for this action, but given the routine presence of McAfee's key trial witnesses in the Northern District of California, California is the most convenient forum for this case.

14

1. McAfee's presence in California, the "interests of justice" will be served by the transfer of this case to California.[16]

**IV.    CONCLUSION**

For the above reasons, McAfee respectfully moves the Court to transfer this action to the Northern District of California.

Respectfully submitted this 23rd day of September, 2009.

        */s/ Gordon H. Copland*
        Gordon H. Copland     (WVSB No. 828)
          gordon.copland@steptoe-johnson.com
        **STEPTOE & JOHNSON PLLC**
        P.O. Box 2190
        Clarksburg, WV  26302-2190
        Telephone:  (304) 624-8000
        Facsimile:  (304) 624-8183

        Danny L. Williams
          danny@wmalaw.com
        J. Mike Amerson
          mike@wmalaw.com
        Ruben S. Bains
          rbains@wmalaw.com
        Michael A. Benefield
          mbenefield@wmalaw.com
        **WILLIAMS, MORGAN & AMERSON**
        10333 Richmond Avenue, Suite 1100
        Houston, Texas 77042
        Telephone: (713) 934-7000
        Facsimile: (713) 934-7011

        Eric M. Albritton
          ema@emafirm.com
        **ALBRITTON LAW FIRM**
        P.O. Box 2649
        Longview, Texas 75606
        Telephone: (903) 757-8449
        Facsimile: (903) 758-7397

        **ATTORNEYS FOR DEFENDANT**
        **MCAFEE, INC.**

---

[16] Additionally, the Court's transfer of this case would cure any forum shopping concerns that stem from Mr. Fischer's decision to file this suit in West Virginia.

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2009, I electronically filed **"MCAFEE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)"** with the Clerk of the Court using the CM/ECF system, which will send notification of such filings to the following counsel of record:

Teresa C. Toriseva
**TORISEVA LAW**
1446 National Road
Wheeling, WV  26003

And I further certify that I have caused the same to be served on the following counsel, by depositing true copies thereof in the United States Postal Service, postage prepaid, in envelopes addressed to the following:

| | |
|---|---|
| John F. Ward | W. Lewis Garrison, Jr. |
| John W. Olivo, Jr. | Timothy C. Davis |
| David M. Hill | Douglas L. Bridges |
| **WARD & OLIVO** | **HENINGER GARRISON DAVIS, LLC** |
| 380 Madison Avenue | 2224 1st Avenue North |
| New York, NY 10017 | Birmingham, AL 35203 |

/s/ ***Gordon H. Copland***
Gordon H. Copland    (WVSB No. 828)
   gordon.copland@steptoe-johnson.com
Michael B. Pallay    (WVSB No. 9397)
   mike.pallay@steptoe-johnson.com
**STEPTOE & JOHNSON PLLC**
P.O. Box 2190
Clarksburg, WV  26302-2190
Telephone:  (304) 624-8000
Facsimile:  (304) 624-8183